No. 15-35986

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

_____

Brian Carlos
*Plaintiff-Appellant*
v.
Patenaude& Felix A.P.C.
*Defendant-Appellee*

On Appeal from the United States District Court for
District of Oregon, Portland
D.C. No.: 3:14-cv-00921-MO
Honorable Michael W. Mosman

## PLAINTIFF-APPELLANT'S OPENING BRIEF AND EXCERPT OF RECORD

Bret Knewtson, OSB 03355
Bret Knewtson, Esq
3000 NW Stucki PL STE 230-M
Hillsboro OR 97124
Telephone: (503) 846-1160
Facsimile: (503) 922-3181
bknewtson@yahoo.com

Mark G Passannante OSB 944035
Broer & Passannante PS
1001 SW Fifth Avenue. #1220
Portland, Oregon 97204
Phone: (503)294-0910
Fax: (503) 243-2717
Markpassannante@msn.com

# Table of Contents

INTRODUCTION ................................................................................1

JURISDICTIONAL STATEMENT ...................................................2

STATEMENT OF THE ISSUES.........................................................2

Carlos alleged four counts in his claim that defendant violated the FDCPA. At issue are three of the counts. Count 1 asserted that the filing of the collection lawsuit on a time barred debt violated the FDCPA. Count 2 asserted failing to disclose the debt was time barred when engaged in a collection attempt was a violation of the FDCPA. Count 3 asserted that alleging a meritless claim in a collection lawsuit such as Quantum Meruit when the collector clearly knows a contract controls the debtor's liability is a false, deceptive and unfair collection practice and a violation of the FDCPA. Counts 1 and 2 were alleged on behalf of Carlos and all others similarly situated. Counts 1, 2, and 3, and the class claim were dismissed at summary judgment. ...................................................................2

I.   Contract Was Unwritten and Subject to Three Year Limitation.....................3

II.   No Tolling Conditions Applied After Account was In Default. ...................3

A.   Re-Payment Plan Tolling Was Error as Virginia Does Not Toll For Payment.................................................................................................3

B.   First Collection Lawsuit Did Not Toll Because Statute Permits Discretion Depending On Circumstances of Dismissal. .......................................................3

III.   Filing Time Barred Collection Complaint Violates FDCPA ........................4

IV.   Quantum Meruit Collection Claim Lacked Merit And As Such Was A False Representation of the Legal Status of the Debt As Well As A Threat To Take An Action Not Intended To Be Taken Or Not Capable Of Being Taken.....5

V.   Class Claim Should Be Remanded For Determination If Collection Lawsuit Was Untimely. ...........................................................................5

PERTINENT STATUTES..................................................................6

STATEMENT OF THE CASE............................................................6

STATEMENT OF FACTS ................................................................11

SUMMARY OF ARGUMENT.........................................................15

STANDARD OF REVIEW ...............................................................16

ARGUMENT ....................................................................................17

I.   COLLECTION LAWSUIT WAS UNTIMELY ............................................17

A.    Contract is Unwritten. ..................................................................17

B.    No Evidence of a Signature...........................................................24

C.    Check Box Is Not Admissible as Evidence of Signature.........................26

D.    No Evidence of Intent to Glean a Signature by Capital One .................27

E.    Signature On Application Does Not Identify All Material Terms...........30

F.    Amending A Written Contract By Oral Or Implied Agreement Renders Contract Unwritten...................................................................33

II.   TOLLING ......................................................................................37

A.    Payment Does Not Toll ..............................................................38

B.    Third Party Debt Management Program ......................................39

C.    Tolling For The First Collection Lawsuit ...................................41

III.  QUANTUM MERUIT ......................................................................43

IV.   CLASS CLAIM .............................................................................48

CONCLUSION ...................................................................................49

**Cases**

American Civil Liberties Union of Nevada v. City of Las Vegas, 333 F.3d 1092, 1097 (9th Cir. 2003) ..................................................................17

Bazemore v. Jefferson Capital Sys., LLC, No. 15-12607, 2016 U.S. App. LEXIS 12403, at *12 (11th Cir. July 5, 2016)...............................................25

Capital One Bank Credit Card Interest Rate Litig., 51 F. Supp. 3d 1316, 1351-52 (N.D. Ga. 2014) ..................................................................47

Capital One Bank v John Fort, 242 Or.App 166 (2011)..........................................17

Columbia Heights Section 3, Inc. v. Griffith-Consumers Co., 205 Va. 43, 47, 135 S.E.2d 116, 118 (1964) ...........................................................40

Conway v. Portfolio Recovery Assocs., LLC, 13 F. Supp. 3d 711, 714-15 (E.D. Ky. 2014) ..................................................................33

Dixon v. Hassell&Folkes, P.C., 283 Va. 456, 461, 723 S.E.2d 383, 385 (2012)....30

Gilbreath v. Brewster, 250 Va. 436, 441, 463 S.E.2d 836, 838 (1995)..................44

Gonzales v. Arrow Fin. Servs., LLC, 660 F.3d 1055, 1061-62 (9th Cir. 2011)......49

Guth v. Hamlet Associates, Inc., 230 Va. 64, 334 Se. 2d 558 (1985)....................41

Guth v. Hamlet Assocs., Inc., 230 Va. 64, 77-78, (1985) .......................................42

In re Lewis, 517 B.R. 615, 621-22 (Bankr. E.D. Va. 2014)....................................28

Kashmir Corp. v. Patterson, 289 Or. 589, 593-94, 616 P.2d 468, 470-71 (1980)...46

Laios v. Wasylik, 564 F. Supp. 2d 538, 542 (E.D. Va. 2008)................................35

Lockney v. Vroom, 61 Va. Cir. 359, 362 (Cir. Ct. 2003)........................................36

Marley Mouldings v. Suyat, 970 F. Supp. 496, 499 (W.D. Va. 1997)....................19

Marley Mouldings v. Suyat, 970 F. Supp. 496, 499-500 (W.D. Va. 1997) ............32

Martin v. Law Offices of Howard Lee Schiff, P.C...................................................19

Martin v. Law Offices of Howard Lee Schiff, P.C., No. 11-484 S, 2013 U.S. Dist.
    LEXIS 132651 (D.R.I. Sep. 16, 2013) ....................................................................18

McCollough v. Johnson, Rodenberg&Lauinger, 610 F. Supp. 2d 1247, 1257 (D.
    Mont. 2009) ...............................................................................................................4

McMahon v. LVNV Funding, LLC, 744 F.3d 1010, 1021 (7th Cir. 2014) .............4

Newport News, H. & O. P. Dev. Co. v. Newport N. S. R. Co., 97 Va. 19, 21-22, 32
    S.E. 789, 790 (1899)................................................................................................20

Orthopaedic& Spine Ctr. v. Muller Martini Mfg. Corp., 61 Va. App. 482, 493, 737
    S.E.2d 544, 549 (2013) ...........................................................................................35

Padfield v. AIG Life Ins. Co., 290 F.3d 1121, 1124 (9th Cir. 2002)........................16

Portfolio Acquisitions, L.L.C. v. Feltman, 391 Ill. App. 3d 642, 652, (2009)........24

Portfolio Acquisitions, L.L.C. v. Feltman, 391 Ill. App. 3d 642, 652, 330 Ill. Dec.
    854, 862, 909 N.E.2d 876, 884 (2009) ....................................................................9

Quackenbush v. Isley, 154 Va. 407, 413, 153 S.E. 818, 820 (1930)......................41

Reid v. Boyle, 259 Va. 356, 369, 527 S.E.2d 137, 144-45 (2000)..........................36

Rubio v. Capital One Bank, 613 F.3d 1195, 1205 (9th Cir. 2010)..........................23

Swanson v. S. Or. Credit Serv., 869 F.2d 1222, 1227 (9th Cir. 1988)....................49

<u>Tao of Sys. Integration v. Analytical Servs. & Materials, Inc.</u>, 299 F. Supp. 2d 565, 576 (E.D. Va. 2004)..................................................................................50

<u>Tao of Sys. Integration v. Analytical Servs. & Materials, Inc.</u>, *Supra*, 299 F. Supp. 2d 565, 576 (E.D. Va. 2004) ..............................................................46

<u>Young v. Preston</u>, 8 U.S. (4 Cranch) 239, 240 (1807) ...........................................46

## Statutes

<u>12 CFR 1026.5</u> ...............................................................................................47

15 U.S.C. § 1692..................................................................................................2

15 USC 1601, et seq............................................................................................47

15 USC 1666 et seq.............................................................................................47

15 USC 1692d......................................................................................................51

15 USC 1692e(2) .................................................................................................50

15 USC 1692e(5) ...........................................................................................11, 50

15 USC 169f.........................................................................................................51

28 USC § 1291 .....................................................................................................2

28 USC § 1331 .....................................................................................................2

ORS 12.410-12.480..............................................................................................7

Va. Code Ann § 59.1-487 ...............................................................................6, 28

Va. Code Ann § 59.1-490 ....................................................................................6

Va. Code Ann § 59.1-491 ...............................................................................7, 28

Va. Code Ann § 8.01-229 ..................................................................4, 6, 42, 45

Va. Code Ann § 8.01-246 ...............................................................6, 7, 8, 29

Va. Code Ann. § 2.2-505 ...................................................................................18

Va. Code Ann. 8.01-230 .......................................................................................6

# INTRODUCTION

Defendant (Patenaude), a law firm specializing in collections and based in California, violated the FDCPA by filing a collection lawsuit on behalf of Capital One Bank (USA) N.A. (Capital One) to collect a credit card debt owed by plaintiff (Carlos) that was barred by the Virginia statute of limitations. That suit also asserted a false claim for Quantum Meruit and overstated the debt. Carlos filed his claim under the 15 USC 1692 (FDCPA) that the time barred collection lawsuit violated the FDCPA (Count 1) on behalf of himself and all others similarly situated. Count 2 alleged failing to disclose that the debt was time barred was a false and deceptive collection act. He also alleged that seeking to recover under the theory of "Quantum Meruit" was a false, unfair and deceptive collection practices (Count 3). The parties filed motions for summary judgment on the issues and the district court ruled that the Virginia five year statute of limitation for a signed and concluded contract applied as opposed to the three year limitation for an unwritten contract, express or implied. The district court determined that the collection lawsuit was timely as a result of two tolling events; a re-payment plan between Capital One and Carlos as well as the filing of a collection lawsuit that was dismissed after a decision on the merits was reached. After the summary judgment decision defendant made an offer of judgment limited to the overstatement claim.

Carlos accepted and a final judgment was entered by agreement on the dismissed claims for the purpose of appeal. ER 172-173.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over plaintiff's case pursuant to 28 USC § 1331, as it was a claim arising under 15 U.S.C. § 1692 (FDCPA). This Court has subject matter jurisdiction over this case pursuant to 28 USC § 1291 as this is an appeal from a final judgment entered by the district court on November 30, 2015. ER 172-173. The notice of appeal was filed on December 24, 2015. ER 175.

## STATEMENT OF THE ISSUES

Carlos alleged four counts in his claim that defendant violated the FDCPA. At issue are three of the counts. Count 1 asserted that the filing of the collection lawsuit on a time barred debt violated the FDCPA. Count 2 asserted failing to disclose the debt was time barred when engaged in a collection attempt was a violation of the FDCPA. Count 3 asserted that alleging a meritless claim in a collection lawsuit such as Quantum Meruit when the collector clearly knows a contract controls the debtor's liability is a false, deceptive and unfair collection practice and a violation of the FDCPA. Counts 1 and 2 were alleged on behalf of

-2-

Carlos and all others similarly situated. Counts 1, 2, and 3, and the class claim were dismissed at summary judgment.

## I.      Contract Was Unwritten and Subject to Three Year Limitation

The district court erred by concluding that Virginia law would require application of the five year statute of limitations for written contracts to Carlos's credit card account. ER 155, ln 12-20. Nothing in the record supported a finding that there was a signature on a concluded contract. The absence of a signature on a concluded contract requires application of the three year limitation which would sustain Carlos's claim that the collection lawsuit was untimely and therefore a violation of the FDCPA.

## II.     No Tolling Conditions Applied After Account was In Default.

### A. Re-Payment Plan Tolling Was Error as Virginia Does Not Toll For Payment

The district court erred by applying tolling for payments made by a third party when the account was in default. Virginia does not toll for payments when a claim has accrued. ER 174.

### B. First Collection Lawsuit Did Not Toll Because Statute Permits Discretion Depending On Circumstances of Dismissal.

The district court determined that the first collection lawsuit tolled the limitation period during the pendency of that suit pursuant to Va. Code Ann §

8.01-229. ER 174. That statute tolls the limitation period if a plaintiff is unable to obtain a final judgment on the merits for any reason. It allows discretion if a plaintiff causes the failure to obtain a judgment such as for failing to serve the defendant within the time allowed by Virginia's rules of procedure. In this case the first lawsuit was dismissed because Capital One did not timely submit an arbitration award in Capital One's favor.

### III.    Filing Time Barred Collection Complaint Violates FDCPA

The district court did not determine whether Patenaude violated the FDCPA by filing a time barred suit claim as it determined that the collection lawsuit was timely. But it is clear that threatening or suing to collect a time barred debt is a violation of the FDCPA. <u>McCollough v. Johnson, Rodenberg&Lauinger</u>, 610 F. Supp. 2d 1247, 1257 (D. Mont. 2009). Affirmed <u>McCollough v. Johnson, Rodenburg & Lauinger, LLC</u>, 637 F.3d 939 (9th Cir. 2011). Attempting to collect a debt that is time barred without disclosing the debt is time barred is also an unfair collection practice <u>McMahon v. LVNV Funding, LLC</u>, 744 F.3d 1010, 1021 (7th Cir. 2014).

**IV.    Quantum Meruit Collection Claim Lacked Merit And As Such Was A False Representation of the Legal Status of the Debt As Well As A Threat To Take An Action Not Intended To Be Taken Or Not Capable Of Being Taken.**

The district court erred in denying Carlos's motion for summary judgment on the issue of Patenaude's pleading of an unmeritorious claim in the collection action. There was no statement by the District court on this issue other than a denial of the count and granting of Patenaude's motion for summary judgment. ER 167, 170-171. Patenaude alleged that principles of equity required Carlos to pay for the benefit Capital One conferred on Carlos and Capital One would be unjustly enriched if allowed to accept the benefit of Capital One's money without restitution.ER 4. There are no circumstances in which Capital One could have prevailed on that claim in a credit card collection lawsuit. As a claim, completely devoid of merit it is an unfair and deceptive collection practice to even attempt it by alleging it. Alleging it may well discourage a contract defense if the consumer perceives the defense as futile if the Quantum Meruit claim prevails.

**V.    Class Claim Should Be Remanded For Determination If Collection Lawsuit Was Untimely.**

As a result of the above error in finding the collection action was not time barred the court denied Carlos's motion to certify a class of those similarly situated. ER 170. Should the error be reversed and the collection lawsuit found to

be untimely then Carlos's motion to certify the class should either be granted or remanded for further determination.

## PERTINENT STATUTES

In plaintiff's addendum are the following statutes:

Va. Code Ann § 8.01-229. Suspension or tolling of statute of limitations;

Va. Code Ann. 8.01-230. Accrual of right of action

Va. Code Ann § 8.01-246. Personal actions based on contracts

Va. Code Ann § 59.1-487. Attribution and effect of electronic record and electronic signature

Va. Code Ann § 59.1-490. Retention of electronic record

Va. Code Ann § 59.1-491. Admissibility of evidence

## STATEMENT OF THE CASE

Carlos filed a class action alleging a class of consumers that had been sued on time barred Capital One accounts by Patenaude were entitled to relief under the FDCPA. Carlos also asserted that alleging Quantum Meruit in a credit card collection action was unfair and a violation of the FDCPA. Those counts were rejected on summary judgment and Carlos proceeded on his count that Patenaude overstated the collection lawsuit. The overstatement count was resolved by an offer of judgment, limited to just that count. In addition to the usual briefs on the issues

-6-

the court requested that each party submit a letter to develop the party's argument on calculating the limitation period. ER 113. Those two letters are not on the docket but Carlos's appears in the Excerpt of Record at 114-117.

The heart of this case is that Capital One accounts are governed by Virginia law. Oregon will apply the statute of limitations, and applicable tolling provisions of the state whose law controls the substantive issues. ORS 12.410-12.480. Virginia has a five year limitation period for contracts that are in writing and signed. Va. Code Ann. §8.01-246(2) and a three year limitation for contracts that are unwritten, express or implied. Va. Code Ann. §8.01-246(4). The parties to this case all agree that the Virginia statute of limitations applies to the contract between Capital One and Carlos.

Virginia made that distinction between "written" and "unwritten" because signed and concluded written contracts are easy to prove. Oral or implied contracts are not so easy to establish. On a basic level everyone knows what a signed and concluded contract is. In the consumer world one's mortgage or retail installment contract for the purchase of a car is a signed and concluded contract. However, Capital One's business does not comport well with signed and concluded contracts. Accounts may stay open for a long time and Capital One presumably does not want to track account agreements on an individual level for its massive population of customers. Instead it uses a form of agreement that is pre-printed and without a

signature line. Requiring customers to sign new agreements and obtaining those signatures when terms change would be an epic undertaking, especially for changes unfavorable to a cardholder. Keeping track of all of those signed contracts would also be challenging. And if a consumer did not sign the new contract then Capital One would not be able to enforce the new term, leading to obvious problems with enforcing account finance charges.

It is one thing to have a uniform set of rules applied to individual accounts. That is a math problem. Having different rules for individual accounts is an administrative problem. Capital One avoids that problem by imposing terms in a manner that does not require evidence of agreement other than continued use of the account.

Anyone who has a credit card knows the terms change and knows that the bank never asks for signatures when those changes occur. Cards are "activated" and then used. That is the universal consummation of the agreement. That is why there is no evidence of a signed and concluded contract associated with the Carlos account. Therefore the three year limitation applies to Carlos's account. A similar fact pattern was considered in Illinois:

> We agree with plaintiff that the nature of credit card transactions and the relationships between the parties is complex and only made more difficult to analyze under modern realities. Despite the fact that no physical signatures are required for many transactions and the advent of electronic signatures and related legislation, we cannot escape the

requirement of a written agreement and the recent analysis of that requirement by the *Parkis* and *Ramirez* courts. Any departure from this finding to account for modern business practices is a matter for the legislature, not this court. Accordingly, the contract at issue is considered to be an oral contract for purposes of the statute of limitations and the five-year period of section 13-205 applies. <u>Portfolio Acquisitions, L.L.C. v. Feltman</u>, 391 Ill. App. 3d 642, 652, 330 Ill. Dec. 854, 862, 909 N.E.2d 876, 884 (2009) applying limitation period for unwritten contracts, as opposed to longer limitation period for written contracts, applied to credit card because parol evidence required to establish contract.

Carlos's other concern is the meritless assertion of claims based on theories other than breach of contract. The contract for a credit card debt, while sometimes difficult to recreate, is nonetheless, a complete tableau of the duties and obligations of the parties to the contract. It is an interstellar space rocket compared to the ox carts of common law contracts. Almost every element of the agreement is viable only because there are statutes that permit radical deviation from common law principles. There is no legal obligation of the card holder that is not anticipated and identified in the card holder agreement. A claim of Quantum Meruit aka "Unjust Enrichment" assumes that something happened between the cardholder and the bank that was not addressed in the card holder agreement yet requires a court to construct an equitable remedy to prevent an injustice. A that is ever alleged in support of this claim are the same facts that are alleged in support of the breach of contract claim.

-9-

The "what" in "So, what," is that such a claim is a Hail Mary pass/end run around the contract in case the debt collector fails to establish a breach of contract claim, which is all that the debt collector is entitled to bring. For example, if the consumer properly defeats the breach of contract claim because the credit card was stolen and charges were run up on it, and the Fair Credit Billing Act forbids liability to the cardholder then that should be the end of the matter. Even the initial disclosures identified by Capital One claim the cardholder will have $0 fraud liability. ER 81. But alleging Quantum Meruit opens the door to further potential liability and litigation. A debt collector can prevail on a Quantum Meruit theory only if the consumer did not have the sophistication to know it was a meritless claim or that she had $0 liability for fraud. The credit card debt collector should never win on any claim other than breach of contract. If it did then somebody somehow somewhere got fooled. As a meritless claim it should never be alleged. To do so is to mislead the consumer into thinking that a defense of the contract would be futile because the debt collector will win on the Quantum Meruit claim. And if the collector alleges it without intending to assert it then it is a threat to take an action not intended or able to be taken. 15 USC 1692e(5). It gives the impression to the least sophisticated consumer that resistance is futile. A competent lawyer would not be fooled by such a meritless claim but neither should

a debt collector take a shot at such a claim. The FDCPA commands the straight and narrow path.

## STATEMENT OF FACTS

Carlos applied online for a Capital One Bank (USA) N.A. (Capital One) credit card, sometime in 2005 after receiving a solicitation from Capital One. After applying he was sent documents indicating his application was approved. When he received his card he was also notified for the first time what the credit limit would be for the account. ER 109. This was a material term as he would have rejected the account if the credit limit was too low. ER 109. Patenaude asserts that at the time of receipt of the card he would have also been provided a cardholder agreement. ER 67 ¶ 22. Carlos activated the card by calling the number provided with the card. ER 93. As part of the agreement Capital One agreed to offer payment protection. ER 82 "Payment Protection Plan Summary" and 94. No documents regarding that plan are in the record.

Carlos never signed any document when he opened the account. The only record of a signature related to the account is a check box in Capital One's internal account notes. ER 66 ¶ 15 and ER 71. (Middle, right, box marked "signed"). That check box has no context for what Carlos was reportedly agreeing to. (ER    ) Carlos did not access Capital One's notes or check that box. Capital One did not

-11-

explain how that box is checked, only that it identifies "Mr. Carlos electronically signed his online application." ER 66 ¶ 15. Capital One does not have a record of the context of that online application as it would have appeared to Carlos. Neither is there a record of the actual electronic signature. The only evidence of that event is the speculation of Capital One's affiant, ER 67, ¶18 and 19. Kime's testimony was based only on her knowledge of Capital One's procedures and review of documents but she does not claim to have reviewed the website as presented to Carlos. Capital One did not produce any record of the documents Carlos was presented with when he opened the account, only exemplars. Kime explained what must have happened after piecing together codes and relating those codes to certain documents. ER 64-65 ¶12-13. That is hearsay and Carlos objected to her statements as hearsay. Document 48, PL Resp Def MS Jpg 2-3.

The account was used by Carlos until September 2006. ER 68, ¶25 and 16, 94, ¶3. In 2006 Carlos lost his job when he was unable to work due to carpal tunnel syndrome. ER 94 ¶4. The account first went over-limit on November 3, 2006 and remained over-limit thereafter. ER 18 and ER 94, ¶3. The last payment made by Carlos was on January 31, 2007 in the amount of $108. ER 94, ¶3.

The account was closed at least by April 11, 2007. ER 105, ¶ 6 and 94, ¶3. The record contains a letter dated April 11, 2007 from Capital One Services Inc, to Carlos that discusses a "Third Party Debt Management Program." ER 103-108.

-12-

The only evidence of the arrangement between Carlos and Capital One is that letter to Carlos from the servicer of the account telling him what to expect. . A series of $55 payments were made by third party debt management company on Carlos' behalf. Carlos does not recall who the third party agency was that made those payments. ER 94, ¶ 3. The last payment made on the account was December 29, 2007. ER 68, ¶25 and 48. For all payments after January 31, 2007, the letter clearly states that a third party is making the payments. ER 105, ¶ #1. "If the agency makes late payments, short payments . . ." Page 4 of that letter also makes it clear that Capital One is collecting a debt, not maintaining an open account. The third party payment agreement did not cure the breach of contract by Carlos nor did it waive any rights that Capitol One had at the time of the initial default or under the cardholder agreement.

The periodic statements show that the $55 payments were less than the minimum allowed payment. ER 32, 35, 36, 38, 40, 42, 44, 46, 48. Nothing in the Capital One letter identified that $55 payments were the agreed upon sum. That was only the amount Capital One or the servicer received. The letter states that the minimum payment must be made each month. ER 105, ¶3 (proposed amount is the minimum monthly amount to be sent by due date). Page 5, indicated that the balance was $1,802.02 and the amount due was $302.02. ER 107. Those amounts are the same as shown in the March 4, 2007 –April 3, 2007 statement. ER 30. The

-13-

last $55 payment was made on December 29, 2007. ER 48, 68, ¶25. The court

determined that the third party debt management agency plan tolled the statute of

limitations for 322 days (April 11, 2007 to February 27, 2008) because Capital One

agreed to suspend its right to sue. ER 170. Nothing in that letter supports that

conclusion and even if it was clear Carlos was making the payment, he failed to

comply with the plan's requirement that the minimum payment be made. Even if

Capital One voluntarily agreed to not bring suit, that is insufficient to toll the

statute of limitations under Virginia law.

The law firm of Derrick E. McGavic filed a collection lawsuit on August 5,

2009 to collect the Capital One account. Capital One received a favorable

arbitration decision but the decision was untimely submitted to the court.

Ultimately the case was dismissed for failure to submit the arbitration award. ER

100-102. The Court found that the pendency of the McGavic collection suit tolled

the limitations period for 210 days (August 6, 2009 to March 4, 2010). ER 170.

Patenaude then filed the second collection action on July 19, 2013 for the

same Capitol One account. ER 6. Patenaude acknowledged that it had a practice of

applying Oregon's six year limitation period to Capital One accounts rather than

either of Virginia's shorter limitations. ER 8-9. Carlos attempted to defend that

lawsuit on his own and then retained counsel. Counsel appeared and Patenaude

dismissed the collection case with prejudice. The district court determined that

with the two tolling events the limitation period did not expire until August 17,
2013, 29 days after the second collection lawsuit was filed.ER 170.

## SUMMARY OF ARGUMENT

The court erred by applying the wrong statute of limitations. The limitation
period that should have been applied is Virginia's three year limitation applied for
unwritten contracts. If the shorter three year limitation applies it is not necessary to
assign error to the tolling as either way the collection lawsuit would be untimely.

If the Trial Court's determination that the longer limitation for a written
contract applies is affirmed then the tolling issues remain dispositive of whether
the Patenaude's collection lawsuit was timely. Payments by themselves are
insufficient under Virginia law to toll the statute of limitations. The third party debt
management plan and acceptance of the plan by Capital One as well as Capital
One's voluntary forbearance from filing suit are insufficient to toll the statute of
limitations under Virginia law. Even if the voluntary forbearance by Capital One
does toll the statute of limitations, such tolling was of an insufficient duration to
make defendant's collection suit timely. The failure to file an arbitration award in
the first collection action does not permit tolling for the period that the first
collection action was pending.

The denial of Carlos's count that alleging the false claim of Quantum Meruit in the collection lawsuit violated the FDCPA should be reversed and judgment entered for Carlos on that issue with remand for determination of damages. Patenaude's evidence of the contract, written or unwritten, as well as the periodic statements and other evidence of a legal agreement made that collection claim untenable.

If the collection lawsuit was untimely the plaintiff's motion to certify class should be remanded for further determination.

## STANDARD OF REVIEW

This appeal arises from a denial of plaintiff's motion for summary judgment and motion to certify class. This Court reviews an order granting or denying summary judgment de novo and uses the same standard as the District Court under Federal Rule of Civil Procedure 56. Padfield v. AIG Life Ins. Co., 290 F.3d 1121, 1124 (9th Cir. 2002). Viewing the evidence in the light most favorable to the nonmovant, this Court must determine "whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." American Civil Liberties Union of Nevada v. City of Las Vegas, 333 F.3d 1092, 1097 (9th Cir. 2003). In reviewing the District Court's ruling on the parties' cross-motions for summary judgment, this Court "evaluate[s] each motion

separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." <u>Id</u>. This standard applies to each of plaintiff's assertions of error all of which arose at summary judgment.

## ARGUMENT

### I.    COLLECTION LAWSUIT WAS UNTIMELY

#### A. Contract is Unwritten.

The court correctly applied Virginia law to determine the limitation period for Capital One's breach of contract claim. ER 169. See also, <u>Capital One Bank v John Fort</u>, 242 Or.App 166 (2011) applying Virginia law pursuant to choice of law in Capital One cardholder agreement. The court relied on the opinion of the Virginia Attorney General[1] Mr. Cuccinelli (<u>Cuccinelli</u>) and analysis of Judge Smith in <u>Martin v. Law Offices of Howard Lee Schiff, P.C.</u>, No. 11-484 S, 2013 U.S. Dist. LEXIS 132651 (D.R.I. Sep. 16, 2013) as supporting application of the

---

[1] The Virginia Attorney General is not permitted to offer opinions that resolve on questions of fact. Va. Code Ann. § 2.2-505. See opinion of Attorney General to The Honorable William C. Mims, Member, Senate of Virginia, 01-047 (12/27/01). Whether a contract is signed and concluded vs unwritten is a question of fact.. http://ag.virginia.gov/files/Opinions/2001/01-047.pdf

five year limitation. The <u>Cuccinelli</u> opinion framed the issue of whether a credit card account could be governed by a written contract as:

"You ask whether credit card agreements governed by the laws of Virginia are written contracts for statute of limitations purposes under § 8.01-246, even though the terms of the contract are found in a series of documents, at least one of which is signed by the cardholder." ER 96.

<u>Cuccinelli</u> assumed that one of the documents was signed and as long as that signed document referenced and incorporated the other documents which evidenced the agreement and contained all the essential terms, leaving nothing further to bind the parties together that would meet the requirements of a written contract.

In an opinion on an uncontested motion for summary judgment, Judge Smith concluded that a written contract was formed when the cardholder applied online for a credit card with Capital One and "provided her electronic signature, acknowledging receipt of Capital One's customer agreement (the "Customer Agreement"), and agreeing to be bound by the terms contained therein." <u>Martin v. Law Offices of Howard Lee Schiff, P.C.,</u> <u>Id</u>. Judge Smith also relied on the <u>Cuccinelli</u> opinion letter.

The court erred because there was no evidence of any signature and no evidence of a concluded contract associated with a signature. Virginia law permits

a five year statute of limitations for written contracts because written contracts

clearly identify the parties and the obligations.

> The Virginia legislature's reasoning for providing a longer statute of
> limitations for breaches of written contracts than for breaches of oral
> contracts is obvious. When a contract is written, it is the language of
> the contract itself which governs, and the effect of lost evidence,
> faded memories, and missing witnesses is less prejudicial to the
> adjudication of the claim than where parol evidence, memories, and
> witness will be relied upon to determine the actual terms of an oral
> contract. Under the policy supporting the statute of limitations, the
> very terms and content of the writing are significant because the more
> that is written the less the court must rely on external evidence which
> deteriorates with time.
> Marley Mouldings v. Suyat, 970 F. Supp. 496, 499 (W.D. Va. 1997)

Cuccinelli identified the critical elements of a written contract as being able to

"show on its face a complete and concluded agreement between the parties.

Nothing must be left open for future negotiation and agreement . . ." quoting

Newport News, H. & O. P. Dev. Co. v. Newport N. S. R. Co., 97 Va. 19, 21-22, 32

S.E. 789, 790 (1899)[2] as controlling the elements of a written contract.

_____

[2]When, however, such a resolution is relied on as the evidence of a written
agreement, it must, like other written contracts, show on its face a complete and
concluded agreement between the parties. Nothing must be left open for future
negotiation and agreement, otherwise it cannot be enforced. *Virginia Hot Springs*
v. *Harrison*, 93 Va. 569; *Berry* v.*Wortham*, 96 Va. 87; *Boisseau*v. *Fuller*, 96 Va.
45.
    The resolution relied on in the case at bar, as the evidence of a written
contract, clearly shows on its face that the parties had not reached a final and
concluded agreement. After resolving that the company donate the sum of $ 2,500

In contrast the only signature alleged to exist in this case was the electronic signature on the application allegedly provided when Carlos visited a Capital One website to apply for an account. To be clear there is no record of that signature only a check box in Capital One's internal notes claiming that a signature was observed. ER 71. Patenaude also argued that because Carlos signed the back of his credit card that signature effectively made the contract written but there is no evidence of that signature or the context in which it was made such as what the back of the card actually said. Those two possibilities of a signature are the only attempts by defendant to identify a signature. The court did not explain what it relied upon for evidence of a signature. Further, the amount of credit that Capital One proposed to offer was a material term. ER 109. Even assuming that the record offered by defendant could constitute a written agreement, this material term was

_____

in money and thirteen lots, the same sentence provides as follows: "Said lots to be selected by the executive committee, the money to be paid out, and the lots to be deeded, under such conditions, and at such times, as the executive committee may agree upon with the representative of the said electric line." The resolution is an agreement to make the donation upon certain conditions. The conditions upon which the donation is to the made are, however, not settled, but expressly left open for future negotiation and agreement between the representatives of the two contracting parties.
Newport News, H. & O. P. Dev. Co. v. Newport N. S. R. Co., 97 Va. 19, 21-22, 32 S.E. 789, 790 (1899)

not agreed upon at the time Carlos would have signed an online application. ER 109.

In support of identifying the process that Carlos would have gone through in applying for the account, Patenaude obtained an affidavit from Capital One (Kime) which asserts (ER 63-68, ¶7 to ¶24) that Carlos received a solicitation from Capital One that would have looked like Exhibit C. ER 79-88. Kime asserts that Exhibit C is an exemplar similar to the solicitation Capital One would have sent Carlos.

Defendant put on that showing of evidence to support the argument that the contract was signed and concluded. But it is clear that only the "Important Disclosures" and "Terms and Conditions" were provided at the time of application. The exemplar of important disclosures relate to the proposed account and disclose interest rates and other account terms. However the "Terms and Conditions" are the terms and conditions of the application, not of the contract for an account holder. There is no document titled "Terms and Conditions." The document titled "Important Disclosures" has a paragraph headed "Terms of Offer" and one headed "Offer Conditions." ER 82. That is not evidence of a contract ready to be signed between the parties. The affidavit of Kime identified that the cardholder agreement was not submitted until after Capital One processed the application and sent a letter to Carlos agreeing to open an account with a $300 credit limit. In that letter the cardholder agreement was provided. ER 67, ¶ 22.

-21-

No original documents of the alleged Carlos agreement were produced. Only exemplars. Exhibit C is the only document defendant relied upon in support of a contract signed by Carlos. Defendant argued that because the "Terms of Offer" contained the statement "I will receive the Capital One Customer Agreement and am bound by its terms and all future revisions" that Carlos's online submission of the application identified and incorporated all the essential terms. That language was explicitly rejected as binding to anyone by this Court:

> It would have been unreasonable to believe that Capital One's solicitation was a binding contractual offer. As the district court noted, the solicitation was generally described as an "invitation" or "application," and it listed a number of contingencies under which her application could be rejected. The solicitation did include a heading entitled "TERMS OF OFFER," but the language of that section made it clear that sending in the application, by itself, did not consummate the contract: "I hereby apply to Capital One Bank . . . for a credit card account. . . . I will receive the Capital One Customer Agreement and am bound by its terms and future revisions thereof." In *Lopez v. Charles Schwab & Co.*, the plaintiff had filled out an application form to open an account, which contained the similar statement, "I hereby request that [Schwab] open a brokerage account . . . . I agree to read and be bound by the terms of the applicable Account Agreement." 118 Cal. App. 4th 1224, 13 Cal. Rptr. 3d 544, 549 (Ct. App. 2004). The court of appeal concluded that "[t]his language . . . indicates Lopez did not expect that filling out the application would conclude her bargain with Schwab . . . ." *Id*. The solicitation and application do not constitute an enforceable contract. The language in Capital One's solicitation is indistinguishable in all relevant aspects from the language in *Lopez* and did not constitute a binding offer.
> Rubio v. Capital One Bank, 613 F.3d 1195, 1205 (9th Cir. 2010)

The application is not a contract. Capital One describes the application as an "Invitation." ER 81 (beginning of letter), ER 82, 83 (#3 "Mail"). A signature on that application can never meet the requirement of a signature that concludes the parties' dealings, with nothing more to negotiate or agree on. There is no evidence of any intent by Capital One to be bound at all and Carlos cannot be bound by terms that have not been disclosed, such as the cardholder agreement or the credit limit. As of the time of application, an objective meeting of the minds had yet to occur.

The argument that the application process identifies all the material terms of the parties leaving nothing for further agreement also fails because not only is that language unenforceable because one can't require a party to agree to future changes or revisions that have not been identified but also because Capital One informed Carlos that if terms were changed, he could reject those terms. ER 26-27. It also fails because it does not identify the customer agreement in a manner that does not require parol evidence. The signature on a concluded contract meets the definition of written because it does not require parol evidence to prove it. This rule was applied in Portfolio Acquisitions, L.L.C. v. Feltman, 391 Ill. App. 3d 642, 652, (2009), (credit card debt subject to shorter limitation as it did not meet longer written contract limitation because contract and parties to contract had to be established by parol evidence). A stranger to a written contract should be able to

read it, see who signed it and know who was charged with what. Stating that you agree to the contract we send you (although we may not send you one and if we do we have not decided which one) is insufficient to identify any contract. The only way to identify the contract offered then or its final form is to consult with the Capital One computer. The interaction with that computer and its production of a cardholder agreement are a mystery that has to be explained by Capital One witnesses. Capital One did not testify that there is a single unique contract that applies to all accounts. The application, even if there was a signature on it does not meet the requirements of a written contract.

### B. No Evidence of a Signature

There is no evidence of a signature. Patenaude offered evidence of why there could be a signature but Kime only knew how the Capital One coding system can be used to identify exemplars. She did not claim personal knowledge of the interaction between Carlos and Capital One, nor did she claim that what she produced was anything other than exemplars. All she is competent to do is provide documents and lay a foundation for those documents. Any additional commentary about the documents and how she thinks they relate to Carlos is hearsay. See for example Bazemore v. Jefferson Capital Sys., LLC, No. 15-12607, 2016 U.S. App. LEXIS 12403, at *12 (11th Cir. July 5, 2016) declining to rely on exemplars offered by a custodian of the original creditor offered to prove arbitration clause.

-24-

Even if the exemplar relied upon by Capital One was admissible it is not relevant because Capital One claims that Carlos applied online. There is no record of what Carlos saw when he applied online. The Exhibit C exemplars are offered to show that what he clicked online was really just him agreeing to what was in the mailing. That is speculation by Kime. She did not identify any personal knowledge of that interaction between Carlos and the website. The signature box containing the only information about the existence of a signature is in Exhibit B and is under the tab "Identification." There is no tab in Capital One's account notes for application or "Terms/Conditions." Kime states that Carlos "would have" done this and "would have" seen that as he clicked through the website but that is speculation and hearsay. ER 66-67, ¶ 15-19. Carlos objected to that hearsay. Document 48 PL Resp Def MSJ pg 2-3. There is no attempt by Patenaude to recreate the website and evidence what Carlos actually saw and clicked.

There is no Virginia authority that says examples of contracts, which do not bear any signature of the party charged, meet the definition of a written contract. At a minimum all the Virginia cases identify real signatures on real documents before concluding a contract is written and subject to the five year limitation.

Patenaude also argued that because Carlos signed his credit card, the contract was written. There was no evidence of what was printed on the back of the card. Carlos testified that he believed he was signing for security purposes, not to

consummate the contract. ER112. Patenaude offered no evidence to contradict his belief. Binding oneself to a contract has to be an intentional act. Signing the back of a credit card that will never be observed or submitted to the other party to the contract cannot objectively be evidence of the parties' agreement to contract. To the contrary, Capital One has no way of knowing if a credit card is ever signed and never requires proof of that signature. The cardholder agreement relied upon by Patenaude states the card should be destroyed by the cardholder, not returned, if the account closes. ER 12, "Account Closure and Suspension of Credit Privileges" item (1). Capital One wants nothing to do with signatures. It relies entirely on exemplars to document agreements, not signed contracts.

### C. Check Box Is Not Admissible as Evidence of Signature

The electronic signature act adopted by Virginia gives effect to an electronic signature depending on the context and surrounding circumstances at the time of its creation. Va. Code Ann. § 59.1-487, see official comment, #5 and #6. Just as one could never cut out an ink and paper signature and paste it into some other context neither can one do that with an electronic signature. In the form asserted by Patenaude in this case Virginia law would not allow that check box as admissible evidence of a signature. Va. Code Ann. § 59.1-491. What exactly does it reference or incorporate with regard to the contract? No one can say. It is just a check box in Capital One's notes under the tab identification. At best that context suggests that

Carlos agreed that he was "the Carlos applying."Kime tried to say it was Carlos's signature but that was clearly hearsay and objected to by Carlos. Document 48 PL Resp Def MSJ pg 2-3.

Ultimately the lack of any signature is the most obvious flaw in the court's decision to apply the longer limitation period. Without a signature the contract is implied and unwritten by definition. A Virginia bankruptcy judge found an American Express credit card account failed to merit the longer limitation period for the same reasons.

> The plain language of § 8.01-246(2) requires that a contract be "in writing and signed by the party to be charged thereby" in order to have the five-year statute of limitations apply. The Attorney General's advisory opinion contains that same requirement, *i.e.*, "that at least one of the documents referencing and incorporating the others is signed by the cardholder." 2011 Va. AG LEXIS 11, 2011 WL 565650, at *1. In this case, the party to be bound is the Debtor. There is no document signed by Debtor that has been offered in evidence in this case. There being no evidence of any signed document referencing and incorporating the agreement between the parties, the Court must find that Va. Code Ann § 8.01-246(2) is inapplicable and the appropriate statute of limitations is three years.
> In re Lewis, 517 B.R. 615, 621-22 (Bankr. E.D. Va. 2014)

**D. No Evidence of Intent to Glean a Signature by Capital One**

The only line for a signature in all the evidence is found at page 5 of Exhibit C. ER 83. The language above that line states:

> I have read the IMPORTANT DISCLOSURES and Terms and Conditions enclosed, including the provision relating to Arbitration and agree to be bound as specified therein. You are authorized to

check my credit and employment history. This offer is nontransferable. To avoid delay, please provide all information requested. ER 83.

Below the signature line it says, "Please see the Important Disclosures on the back of the letter for rate, fee and other cost information[3]." If acceptance of the contract could be evidenced by signing the application for an account, then Capital One would be bound upon the signing. There was no evidence that suggested Capital One intended to be bound to issue credit on the terms and conditions it disclosed in the application upon Carlos signing the application. The intent of Capital One to form a written contract is negated by the three options for accepting the offer to apply for an account. An applicant can apply by phone, online, or by returning the application. ER 84. If Capital One had the intent to enter into only written contracts then it would require a binding signature. It would not permit acceptance by phone or online.

> The fact that the Writing states the signature requirement twice underscores its importance to Hassell and clearly evidences Hassell's intent that the Writing would not become a written contract without Dixon's signature. Dixon's failure to sign and return the Writing as its terms required did not preclude the parties from forming a binding contract. But Dixon's failure to sign and return the Writing did preclude the Writing itself from becoming a written contract as contemplated by Code § 8.01-246(2).

---

[3] These are the disclosures required by TILA, Reg. Z § 1026.5(a)(1). Current requirements set by CFPB . Prior editions of Reg Z in effect in 2005 at 12 CFR 226.5 when consumer credit was handled by the FTC.

<u>Dixon v. Hassell&Folkes, P.C.</u>, 283 Va. 456, 461, 723 S.E.2d 383, 385 (2012)

Patenaude offered no evidence that Capital One expected or required a signature to consummate the contract. That Carlos was permitted to use the card without any signature and by simply calling to activate the account is evidence that Capital One wanted nothing to do with signatures and fully expected the contract to be implied by his use of the account.   Further, Carlos did not intend to enter into a contract with Capital One unless he was provided a sufficient credit limit.  The credit limit Capital One was willing to provide to Carlos is not in the application, not in the disclosures and nor is the limit or the letter informing Carlos of his credit limit incorporated into any document signed by Carlos, just as all subsequent modifications of the contract were determined to be accepted by further use of the account after notice of the changes in terms, the amount of credit and acceptance thereof was only agreed upon by the letter sent to Carlos and his subsequent activation of the card. Neither of which required a signature to conclude. This is also illustrated by the periodic statement for the period Jan 4, 2007 to Feb 3, 2007 in which Capital One identifies changes to the agreement. ER 26-27. The cardholder has the option of rejecting the changes by closing the account. If the account remains open then new terms are in effect. Those new terms were not in effect when the account was opened. The agreement to the new terms is implied by

-29-

further use of the account and that is the hallmark of an unwritten contract. Had

Capital One required a signature on a document that incorporated those new terms

then it would be a written agreement.  Capital One is crystal clear that it does not

want a signature. Far easier to imply agreement by use and close the accounts that

decide to leave the herd. Capital One credit card agreement are unwritten contracts

under Virginia law.

### E. Signature On Application Does Not Identify All Material Terms

Lack of identification of a signature aside, Patenaude cannot rely on the

application as identifying the terms of the agreement. There are terms that remain

open to negotiation. Just as *Newport* (Supra) rejected the resolution of the board as

a written contract because it left terms open so did the Ninth Circuit when

analyzing language of a Capital One offer reject the argument for the same reasons

in *Rubio* (Supra).

For starters, the cardholder agreement was not disclosed at the time the

invitation to apply for an account was returned to Capital One. ER 67, ¶22. Neither

had the credit limit been disclosed. That term was material as Carlos would have

rejected the account if the credit limit was less than $300. ER 109. It is evident that

Carlos had the right to reject the account as explained in *Rubio* but also because the

account can't be used unless it was activated by calling Capital One. If one were to

rely on the record of the contract at the time of application it is clear that it would

-30-

be unenforceable for lack of indefiniteness. The "exemplar" disclosures identify an over-limit fee of $29 (ER 82) but without agreement on the credit limit that term is unenforceable. Even though some terms are identified the documents were never found by Capital One, such as the "Payment Protection Addendum." ER 82 and 94, That is an example of how vague identification in the "writings" require reliance on parol evidence and why it is insufficient to form a written contract. Neither is there evidence of agreement on the changes to the credit limit as the account progressed to the $1,500 credit limit according to the last statement. ER 60. Capital One's account notes incorrectly reflect a credit limit of $2,000 being offered. ER 69. If that was the case then some of the over-limit charges were improper. ER 54.

There is no evidence of a signature but even if there was a signed application it does not appear on a document that identifies and incorporates the terms of the agreement. "After reading the three letters, this court is left with the definite impression that there must be something more to this contract." Marley Mouldings v. Suyat, 970 F. Supp. 496, 499-500 (W.D. Va. 1997). The lack of finality and terms at the time Carlos applies for the account leaves the same impression.

A Kentucky court found a similar lack of identification of terms when it ruled a Capital One account was subject to the three year limitation period.

Despite a lack of controlling precedent on this issue in Kentucky, many other jurisdictions commonly treat credit card agreements as contracts not in writing, because such agreements typically do not contain on their face all the essential terms necessary to constitute a written contract. [R. 8 at 6-13.] See, e.g., *Portfolio Acquisitions, LLC v. Feltman*, 391 Ill. App. 3d 642, 909 N.E.2d 876, 883-84, 330 Ill. Dec. 854 (Ill. App. 2009) (applying statute of limitations for an oral contract to a credit card action because the credit card agreement did [9] not include all essential elements within its four corners); *Delrey v. Capital One Bank*, 2009 Extra LEXIS 51, 2009 WL 5103229 (Fla. Cir. Ct. July 7, 2009) (examining Virginia law in determining that Virginia's statute of limitations for unwritten contracts should apply to a Capital One credit card agreement because it did not on its face show a completely concluded agreement). For an agreement to constitute a written contract "all its terms and provisions can be ascertained from the instrument itself." *Mills v. McGaffee*, 254 S.W.2d 716, 717 (Ky. 1953) (internal citations omitted). As in *Delrey*, Conway's Capital One customer agreement lacks several essential terms of a written contract, including Conway's signature and the applicable interest rate, among other things. [See R. 8-2.] <u>Conway v. Portfolio Recovery Assocs., LLC</u>, 13 F. Supp. 3d 711, 714-15 (E.D. Ky. 2014)

One cannot identify the terms of the agreement without reliance on witnesses to identify the documents that contain the terms. If one were to put random "Important Disclosures" and cardholder agreements in front of the jury, with the actual "Important Disclosures" and cardholder agreement mixed in, nobody on that jury would be able to identify the agreement. It takes oracles from Capital One to produce the governing documents. On the other hand if one were to put six retail installment contracts for the purchase of a car in front of the jury, those jurors

would identify the relevant contract in moments by finding the one bearing the right signature.

### F.  Amending A Written Contract By Oral Or Implied Agreement Renders Contract Unwritten

Posit, Carlos and Capital One entered into a simple contract with the term of a $20 over-limit fee and both signed it. Assume that act formed a written contract. Later, Capital One tells Carlos that if he wants to keep the account open he has to agree to a $50 over-limit fee. Carlos says nothing but keeps using the account. The oral or unwritten modification changes that contract into an unwritten one for the simple reason that the "written" terms are no longer identifiable by the document signed by the parties. In order to establish a right to the $50 over-limit fee, at the point of a later breach, Capital One has to rely on parol evidence. There is little discussion in Virginia's case law about how a modification affects the limitation period. But it is clear that Virginia limits the definition of a written contract to those that can be established without parol evidence.

> In order to constitute a written contract the "essential terms of the agreement must be obvious on the face of the writing without recourse to parol evidence." *Janus v. Sproul*, 250 Va. 90, 458 S.E.2d 300, 301 (Va. 1995)(citing *Rahm v. Klerner*, 99 Va. 10, 37 S.E. 292, 293 (Va. 1900)); *see Beekman v. Cornhusker Farms*, 214 Neb. 418, 333 N.W.2d 918, 920 (Neb. 1983)("[I]f a written agreement is so indefinite as to necessitate a resort to parol testimony to make it complete, the statute of limitations concerning contracts not in writing would be applicable.")(citations and internal quotations omitted). When the parties could have easily drafted a document that would

-33-

> have constituted a written contract, but did not, the writings created
> after the initial oral contract was written "merely . . . memorialize the
> oral contract but do not merge it into a written contract." *Digital
> Support Corp. v. Avery*, 49 Va. Cir. 324, 1999 WL 796745 1 (Va. Cir.
> Ct. 1999).
> <u>Laios v. Wasylik</u>, 564 F. Supp. 2d 538, 542 (E.D. Va. 2008)

But it makes sense given the narrow purpose of allowing a longer limitation for

breach of written contracts. Written contracts are simple to prove.

> Furthermore, there is insufficient evidence to support the
> commission's finding that the SPA was modified with Dr. Coleman's
> concurrence. "'A contract in writing, but not required to be so by the
> statute of frauds, may be dissolved or varied by a new oral contract,
> which may or may not adopt as part of its terms some or all of the
> provisions of the original written contract . . . .'" <u>Reid v. Boyle</u>, 259
> Va. 356, 369-70, 527 S.E.2d 137, 144-45 (2000) (quoting <u>Zurich
> General Accident & Liability Ins. Co. v. Baum</u>, 159 Va. 404, 409, 165
> S.E. 518, 519 (1932)).
> <u>Orthopaedic & Spine Ctr. v. Muller Martini Mfg. Corp.</u>, 61 Va. App.
> 482, 493, 737 S.E.2d 544, 549 (2013)
> By orally modifying a written contract it becomes a new oral contract and is

subject to the unwritten contract statute of limitations. Counsel has not found a

case on point but as <u>Orthopaedic & Spine Ctr</u> makes clear a written contract

becomes oral when so modified[4].<u>Reid v. Boyle</u>, 259 Va. 356, 369, 527 S.E.2d 137,

---

[4] Defendant cited to <u>Lockney v. Vroom,</u> 61 Va. Cir. 359, 362 (Cir. Ct. 2003) as
supporting the argument that oral modifications to a written contract are subject to
the three year limitation but the terms of the written contract remain subject to the
five year limitation. That case does not support that argument as it determined that
one claim was subject to a written contract (worker's comp representation) and the
other independent claims were subject to an unwritten contract (social security

144-45 (2000) also citing *Zurich General Accident & Liability Ins. Co. v. Baum*, 159 Va. 404, 409, 165 S.E. 518, 519 (1932) as identifying that written contract may be modified or dissolved by a new oral contract. This makes sense in terms of applying the limitation period for unwritten contracts. The signature no longer references the bargain between the parties. Parol evidence is required to establish the new term and who is bound by it. That evidence is harder to track and the policy behind the shorter limitation is served by applying the shorter limitation. The cases discussing the failure to establish a written contract identify that material terms are absent and the document that is signed does not identify the concluded agreement. For instance the over-limit fee in 2005 was $29 according to the exemplar disclosures. ER 82. That term was orally modified in 2007 to a variable fee linked to the credit limit. ER 26-27. Nothing associated with the application disclosure of terms and rates identifies that term. That new term is only unenforceable later if Carlos follows the procedure for rejecting the new terms (call Capital One and close your account). If he agrees to the new terms all he has to do is keep the account open. No signature is requested either way. Only an implied contract exists. Carlos kept the account open thereafter and made one

---

benefits and default judgments). The unwritten contract had nothing to do with the written contract.

additional payment. (ER    ). Even if the original agreement was "written" under Virginia law, the new implied agreement that included the variable rate over limit fee created an implied agreement and, at that point in time, became unwritten and subject to Virginia's three limitations period.

If we take the Cuccinelli analysis that a signature on a document that incorporates all the terms of the contract is adequate to meet the written contract definition then what happens when that contract is orally modified and the signed document no longer incorporates all of the material terms of the contract? As with all credit card agreements the terms changed repeatedly over the life of the account and there is no new signed agreement identifying those new terms. While Carlos does not agree with Cuccinelli analysis, even if the Court accepts that analysis, once Capital One imposes a new term that is not referenced in the original signed contract, the agreement changes from written to unwritten. In order to keep the written character of the contract, those new terms must be signed by the cardholder to be enforceable. There is no evidence that Carlos signed a new or modified cardholder agreement with Capital One incorporating any subsequent change in terms, including the calculation of over limit fees.

Even without the modification problem identified above, defendant argued that the signature on the application created a signed and concluded agreement because it referenced the account disclosure documents. However, the credit limit

was not disclosed at that time because Capital One had not decided whether to grant credit or if so how much. That credit limit was a material term to Carlos. Too low and he would reject the offer. ER 109. The only evidence of acceptance of that new term was his use of the account. The signature on the application could not be construed as an agreement to that term. So, at its formation the contract contained a new term that were not in effect at the time of the so-called signature and that is not referenced in any document containing Carlos' signature. Without a new signature the contract is clearly unwritten as the terms at the time of signing had already changed before the account is activated. The agreement is implied by Carlos's use of the account. From the very beginning it was unwritten.

Ultimately the lack of any signature is a bar to the court's decision to apply the longer limitation period. Without a signature the contract is implied and unwritten by definition. The only evidence of the existence of a signature is inadmissible hearsay and does not reference any terms. It is just a check box that only Capital One knows about.

## II. TOLLING

The court identified two tolling events. The first was the third party debt management agency plan asserted to have tolled the statute of limitations for 322 days (April 11, 2007 to February 27, 2008) because Capital One agreed to suspend its right to sue. ER 170.

The second tolling event was the collection lawsuit filed on August 5, 2009 to collect the account. Capital One received a favorable arbitration decision but the decision was untimely submitted to the court and the case was dismissed for failure to submit the arbitration award in a timely fashion. ER 1. The district court ruled that that collection lawsuit tolled the period for 210 days (August 6, 2009 to March 4, 2010). ER 170.

## A. Payment Does Not Toll

The district court identified that Capital One's claim accrued on the date Carlos missed the first minimum payment (March 3, 2007). ER 169. Carlos does not assign error to that finding that the claim accrued with the missed minimum payment. However, Carlos does assign error on the date that the first payment was missed. The first date Capital One could have instituted suit given the missed payment was January 3, 2007. That is when the first payment was missed. ER 20, 22. Thereafter, Carlos made his last payment in the amount of $108.00 on January 31, 2007 (ER 24), but that did not eliminate the previous default and while it may have placed the account back in good standing at that time, because the subsequent payment due on March 3, 2007 was also missed. Those 28 days in January 2007 should also be counted in any tolling analysis as Carlos was in breach of the cardholder agreement to make the minimum payment each month. Carlos then missed the March 3, 2007 payment relied upon by the court. The twenty-eight days

that the account was in default for failure to pay (January 4 to January 31) should also be included in any tolling analysis.

> It is well settled in our jurisdiction that the statute of limitations begins to run from the time the account is due. The due date depends upon the terms, express or implied, upon which the articles are sold. Burks *Pleading and Practice,* 4th ed. Limitation of Actions, § 233(11), p. 399.
> Columbia Heights Section 3, Inc. v. Griffith-Consumers Co., 205 Va. 43, 47, 135 S.E.2d 116, 118 (1964)

The cardholder agreement requires the minimum payment to be made each month. ER 11-12. A breach of promise to pay occurs at the time the obligation to pay is breached Rivera v. Nedrich, 259 Va. 1, 539 E.2d. 310 (2000). Subsequently making up that payment and then immediately falling behind again does not eliminate the initial breach.

### B. Third Party Debt Management Program

Virginia codified the tolling effect of a promise in writing to pay a debt at Va. Code Ann. § 8.01-229(G). Payment without a written promise to pay does not toll. Guth v. Hamlet Associates, Inc., 230 Va. 64, 334 Se. 2d 558 (1985). See also, Quackenbush v. Isley, 154 Va. 407, 413, 153 S.E. 818, 820 (1930) cited by *Guth* declining to toll for interest payments made by check's signed by the debtor and specifically identifying the debt to which payments were to apply. The court found that the Capital One Services, Inc. letter to Carlos that stated a third party debt management entity would be making payments on the account was proof of a new

agreement between Capital One and Carlos that tolled the statute of limitations. The court reasoned that the agreement was a bar to Capital One bringing suit.

The letter is not a new agreement or a bar to suit. It identifies that the previous terms of the account are in effect, unless modified by the debt repayment agreement. ER 105, bottom. The letter makes it clear the account is suspended and will not be reinstated. ER 105, ¶6. It is also clear that it is an attempt to collect the account, nothing more. Nothing in the letter identifies an agreement by Capital One not to sue Carlos. Nor can it be construed as a written promise by Carlos to pay the debt as it is not a communication from Carlos at all. Capital One could have brought suit at any time after the January 3, 2007 payment was missed because the contract required minimum payments that were not being made. In addition, there is no evidence that the debt management plan cured the breach and prevented suit. This is because all of the $55 payments were less than the minimum payment required to comply with the debt management plan. ER 105, ¶3.

In any event, Virginia is clear that such an agreement would not toll the limitation period. The letter from Capital One Services Inc., even if it could be construed as a voluntary forbearance agreement, is not evidence of a promise in writing from Carlos to Capital One that he will pay the debt. It is only a promise by Capital One Services, Inc. that it will lower the interest rate if Carlos makes the minimum payment. An unequivocal promise, in writing, by the debtor to pay the

-40-

debt is what tolls or renews the limitation period. <u>Guth v. Hamlet Assocs., Inc.</u>, 230 Va. 64, 77-78, (1985). Nothing in that letter can be construed as a promise of any kind by Carlos. Assume there was a writing sufficient to renew the limitation period. It would not continue to toll while Carlos makes payment. It would only renew the period allowed for suit from the time the promise was made. There is no tolling for the 60 days as the Trial Court found. ER 170. The only reference in the Capital One letter is that if the account goes 60 days or more without payment it will be removed from the program and the modified terms will be cancelled. ER 105 ¶4. In this instance it would not toll either as the requirement to make minimum payments is not being met and thus, Carlos remained firmly in breach of contract. At a minimum, subtracting the 60 days from the tolling period would make the collection lawsuit untimely.

### C. Tolling For The First Collection Lawsuit

An unrelated lawfirm filed a collection action against Carlos to collect the same account Patenaude attempted to collect. In Oregon cases for less than $50,000 are sent to court annexed arbitration. An arbitration hearing was held and a decision in favor of Capital One was rendered. For unknown reasons the award was not timely submitted to court. When it was the court rejected it as untimely and the case was dismissed without prejudice. Carlos argued in this case that tolling for Capital One under those circumstances is unjust because Capital One

obtained a decision on the merits in its favor and neglected to follow through with

the case. Document 48, PL Resp Def MSJ pg 12-13. The tolling statute is meant to

preserve a plaintiff's claims when a plaintiff's case is dismissed and plaintiff is not

at fault for the dismissal. Virginia appears to have a rule of procedure "3.3" which

requires service of a suit on a defendant within one year of filing. If service is not

effected then the case is dismissed, sometimes with prejudice if the plaintiff did not

attempt service, and sometimes without prejudice if the plaintiff attempted but was

unable to serve the lawsuit. In addition, there are dismissals without prejudice that

occur because the court relies on an imperfect system to find out why service was

not made. In those cases the court has discretion to apply the tolling provision of

Va. Code § 8.01-229(E)(1).

> Furthermore, if dismissal under Rule 3:3 were without prejudice, the
> tolling provisions of Code § 8.01-229(E)(1) could be invoked,
> allowing repeated filings which effectively nullify the statute of
> limitations and potentially allow harassment of the defendant. See W.
> Hamilton Bryson, Handbook on Virginia Civil Procedure, at 99-100
> (2d ed. 1989); Leigh B. Middleditch, Jr. & Kent Sinclair, Virginia
> Civil Procedure § 7.12, at 375-79 (2d ed. 1992). If a plaintiff who has
> suffered a dismissal for failure to comply with Rule 3:3 retains the
> right to refile the cause of action against the previously unserved
> defendant, both the purpose of Rule 3:3 and the statute of limitations
> are undermined.
> Gilbreath v. Brewster, 250 Va. 436, 441, 463 S.E.2d 836, 838 (1995)

In Carlos's case Patenaude offered no explanation as to why the arbitration award

was not filed. Patenaude did not argue the issue in the collection case to support

the timely filing of defendant's collection action. Having not invoked tolling in the

collection action below it follows that it was waived. Defendant offered no facts in

support of its speculation that its collection lawsuit would have benefited from the

tolling provision. Given the failure to allege or argue that tolling event in the

collection lawsuit it clearly waived it. If parties can waive statute of limitation

defenses then presumably so can creditor's waive tolling defenses.

### III.   QUANTUM MERUIT

Carlos alleged in count three:

> The attempt to collect the debt by asserting in a breach of contract
> lawsuit that the creditor was entitled to Quantum Meruit relief when it
> would be apparent to a competent lawyer that such relief was clearly
> unobtainable both because the lawsuit was premised on a breach of
> contract and because Quantum Meruit relief was barred by the
> applicable statute of limitations violated at least one of the following
> provisions of the FDCPA, 15 U.S.C. §§ 1692d, 1692e, 1692e(2),
> 1692e(5), 1692e(9), 1692e(10), 1692f, and 1692f(1).
> ER 4.

In support of the Quantum Meruit claim in the collection lawsuit, Patenaude

alleged that principles of equity required Carlos to pay for the advance of monies

and/or extension of credit. There was no allegation of any fact that supported the

application of "principles of equity." That allegation was false and deceptive

because the only recovery for the debt was via breach of contract. It is

inconceivable that any facts could exist that would support a recovery under

Quantum Meruit. A credit card account could not exist at common law for lack of

-43-

consideration as well as indefiniteness and probably because the penalties such as over-limit charges etc would be unenforceable liquidated damages. Credit card accounts exist because of liberal banking statutes. Even then the issuance of credit accounts are highly regulated by Federal regulation such as the Fair Credit Billing Act, 15 USC 1666 et seq., and the Truth in Lending Act, 15 USC 1601, et seq. The terms of credit must be disclosed. 12 CFR 1026.5.

Nor can one state a claim for Quantum Meruit (Unjust Enrichment) when a contract controls their duties. Young v. Preston, 8 U.S. (4 Cranch) 239, 240 (1807). Virginia and Oregon do not differ and the principle is as simple, as it is sound.

> Under Virginia law, an action for unjust enrichment is quasi-contractual in nature. *Acorn Structures v. Swantz,* 846 F.2d 923, 926 (4th Cir. 1988); *Kern v. Freed Co.,* 224 Va. 678, 299 S.E.2d 363, 364-65 (Va. 1983). To establish the quasi-contract, a plaintiff must show three elements: (1) a benefit conferred on the defendant by the plaintiff; (2) knowledge on the part of the defendant of the conferring of the benefit; and (3) acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value. *Nossen v. Hoy,* 750 F. Supp. 740, 744-45 (E.D. Va. 1990).
> Tao of Sys. Integration v. Analytical Servs. & Materials, Inc., *Supra*, 299 F. Supp. 2d 565, 576 (E.D. Va. 2004)

Oregon:

> At that point the validity and enforceability of the contract were no longer in issue, and the trial court correctly struck the quantum meruit count.*Feldschau v. Clatsop County*, 105 Or 237, 241, 208 P 764 (1922), is authority for this proposition:
> Kashmir Corp. v. Patterson, 289 Or. 589, 593-94, 616 P.2d 468, 470-71 (1980)

A credit card account leaves nothing to the imagination as to the right of the credit card issuer to impose finance charges on the charges incurred by the cardholder. Keep in mind that Patenaude asserts in the collection action that there is a contract and all the other unsurprising facts associated with a credit card debt and breach of that contract. The collection plaintiff may have a hard time proving a contract as vague and indefinite as the one Capital One uses. A collection plaintiff may not even understand that contract and how it works but there is no question that a contract controls those issues that resolve a collection action.

Even Capital One has rejected the notion that Quantum Meruit would apply to its dealings with cardholders. In a case brought by cardholders against Capital One the plaintiff cardholders alleged an implied contract and Unjust Enrichment. The court denied the claim because the dispute was controlled by the contract. In re Capital One Bank Credit Card Interest Rate Litig., 51 F. Supp. 3d 1316, 1351-52 (N.D. Ga. 2014).

Recovering the debt arising from the account which was governed by an agreement is all defendant attempted. That right to collect the debt will always be governed by the contract controlling the credit card account. The only exception would be if the account or the charges on the account were not authorized. Then the claim would be governed by the Fair Credit Billing Act. Quantum Meruit is a dead letter.

Patenaude confirmed in its response to Carlos's motion for summary judgment the ways that quantum meruit is unfair to the least sophisticated consumer. It argued that the claim was legitimate because if the debt collector failed to prove the contract then it should be allowed to recover under unjust enrichment. It argued that the longer Oregon limitation period applied to quantum meruit so if the contract claim was barred it could still prevail on the quantum meruit claim. Document 45, Def Resp PL MSJ pg 14. It argued that quantum meruit allowed it to collect all the finance charges allowed by the contract even if it can't prove the card was issued to the debtor. Document 45, Def Resp PL MSJ pg, 14-17. Incredibly it argued that some collection defendants deny there is a contract in credit card collection lawsuits. That denial is not a bar to the collector establishing that the defendant is ignorant and proving the agreement. All of these arguments are untenable because a contact existed that controlled the liability for those elements but they illustrate the mind set of collection lawyers who allege Quantum Meruit to ensure victory over the collection defendant. That is an unfair, deceptive and misleading tactic when deployed against the least sophisticated consumer who lacks the skill, knowledge, or even ability to navigate the court system. Only a competent lawyer could defeat the Quantum Meruit claim.

Alleging a meritless claim is unfair, deceptive and abusive. And if the collector does not actually mean to enforce that claim because it is just a "back up"

-46-

claim then that is a threat to take an action not intended to be taken. 15 USC

1692e(5) and (10). <u>Swanson v. S. Or. Credit Serv.</u>, 869 F.2d 1222, 1227 (9th Cir.

1988). The least sophisticated consumer standard is applied in evaluating a 15 USC

1692e claim. <u>Gonzales v. Arrow Fin. Servs., LLC</u>, 660 F.3d 1055, 1061-62 (9th

Cir. 2011). In this case the defendant did not pursue the claim when Carlos hired

counsel and asserted the contract claim was time barred. That is evidence that

defendant did not intend to pursue the Quantum Meruit claim and it was an empty

threat.

As applied to 15 USC 1692e(2), implying that the debt can be collected

under that theory is a misleading representation of the character (there is a

contract), the amount (it would always exclude contractual damages), and the legal

status (the claim cannot exist if a contract is known to exist). It also is an attempt to

deny a consumer's rights they may have in the contract such as a favorable choice

of law provision.

It is also unfair (15 USC 169f) and an abuse (15 USC 1692d) because if the

least sophisticated consumer beats the contract claim as Carlos did by asserting it is

time-barred and the collector maintains the Quantum Meruit claim then the

consumer must still overcome the arguments this Patenaude made at summary

judgment, such as whether Oregon's longer limitation period applies or the claim is

viable because it is unjust that the contract claim is time-barred. Defeating those

arguments requires a great deal of sophistication. For instance rebutting the argument that the Oregon limitation applies requires proving that the claim is not viable because the contract provided the parties redress. The statute of limitations for a claim of unjust enrichment is three years under Virginia law. <u>Tao of Sys. Integration v. Analytical Servs. & Materials, Inc.</u>, 299 F. Supp. 2d 565, 576 (E.D. Va. 2004). But deciding whose limit applies is vexing. A consumer won't know how to make those arguments. If the contract claim fails because the contract says "zero liability for fraud" as this one does but there are fraudulent charges then the consumer must prove the FCBA prevents recovery of the unauthorized charges. Those are arguments well within a sophisticated lawyers grasp but not the consumer's. The claim has no merit and a consumer should not be presented with it.

## IV.  CLASS CLAIM

Carlos alleged a class claim based on Patenaude having threatened to sue on a time-barred debt. The sole reason given by the court for dismissal of the class claim was that the collection lawsuit was timely. ER 170. Should the appeal be successful in reversing the decision on that determination plaintiff requests that the class claim be remanded for determination on its merits or grant of the class claim to proceed.

## CONCLUSION

Carlos respectfully requests that this Court reverse the district court's grant of Summary Judgment in favor of defendant, and denial of plaintiff's Summary Judgment on Counts 1, 2, and 3 and remand for determination of damages. Carlos further requests that the Court reverses the District Court's denial of Plaintiff's Motion for Partial Summary Judgment that defendant's collection action was time barred. Carlos requests that the Court remand his class claim for further proceedings relating to its certification.

July 22, 2016

s/ Bret Knewtson
Bret Knewtson, OSB
03355

## STATEMENT OF RELATED CASES

None.

## Certificate of Service:

All parties to appeal are Registered for the CM/ECF System. This Opening Brief and included Addendum of Cases was served by CM/ECF on those parties on July 22, 2016.
Signature: s/ Bret Knewtson

**Form 8.** **Certificate of Compliance Pursuant to 9th Circuit Rules
29-2(c)(2) and (3), 32-2 or 32-4[1] for Case Number** 15-35986

Note: This form must be signed by the attorney or unrepresented litigant *and attached to the end of the brief.*

I certify that (check appropriate option):

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 32-2(b).
The brief is [＿＿＿] words or [＿＿＿] pages, excluding the portions
exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable, and is filed by
(1)☐ separately represented parties; (2)☐ a party or parties filing a single brief in
response to multiple briefs; or (3)☐ a party or parties filing a single brief in response
to a longer joint brief filed under Rule 32-2(b). The brief's type size and type face
comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the longer length limit authorized by court order dated

[＿＿＿＿＿]. The brief's type size and type face comply with Fed. R. App. P.
32(a)(5) and (6). This brief is [＿＿＿] words or [＿＿＿] pages,
excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable.

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to

Circuit Rule 32-2(a) and is [＿＿＿] words or [＿＿＿] pages, excluding
the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable. The brief's
type size and type face comply with Fed. R .App. P. 32(a)(5) and (6).

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to

Circuit Rule 29-2(c)(2) or (3) and is [＿＿＿] words or [＿＿＿] pages,
excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable. The
brief's type size and type face comply with Fed. R .App. P. 32(a)(5) and (6).

☒ This brief complies with the length limits set forth at Ninth Circuit Rule 32-4.

The brief is [13,134] words or [49] pages, excluding the portions
exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable. The brief's type size and
type face comply with Fed. R. App. P. 32(a)(5) and (6).

| Signature of Attorney or Unrepresented Litigant | s/Bret Knewtson, OSB 033553 | Date | 7/22/2016 |
|---|---|---|---|

("s/" plus typed name is acceptable for electronically-filed documents)

[1] If filing a brief that falls within the length limitations set forth at Fed. R. App. P. 32(a)(7)(B), use Form 6,
Federal Rules of Appellate Procedure.                                                          *(Rev.7/1/16)*

No. 15-35986

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

_____

Brian Carlos
*Plaintiff-Appellant*
v.
Patenaude & Felix A.P.C.
*Defendant-Appellee*

On Appeal from the United States District Court for
District of Oregon, Portland
D.C. No.: 3:14-cv-00921-MO
Honorable Michael W. Mosman

## PLAINTIFF-APPELLANT'S ADDENDUM OF STATUTES

Bret Knewtson, OSB 03355
Bret Knewtson, Esq
3000 NW Stucki PL STE 230-M
Hillsboro OR 97124
Telephone: (503) 846-1160
Facsimile: (503) 922-3181
bknewtson@yahoo.com

Mark G Passannante OSB 944035
Broer & Passannante PS
1001 SW Fifth Avenue. #1220
Portland, Oregon 97204
Phone: (503)294-0910
Fax: (503) 243-2717
Markpassannante@msn.com

**INDEX**
**(Note Bookmarks on left toolbar should work)**
**INDEX**

| Title | AD No. |
|---|---|
| Va. Code Ann § 8.01-229. Suspension or tolling of statute of limitations; | 1-4 |
| Va. Code Ann. 8.01-230. Accrual of right of action | 5 |
| Va. Code Ann § 8.01-246. Personal actions based on contracts | 6 |
| Va. Code Ann § 59.1-487. Attribution and effect of electronic record and electronic signature | 7-8 |
| Va. Code Ann § 59.1-490. Retention of electronic record | 9-11 |
| Va. Code Ann § 59.1-491. Admissibility of evidence | 12 |

## *Va. Code Ann. § 8.01-229*

Includes all acts adopted at the 2016 Regular Session of the General Assembly.

*Code of Virginia* > *TITLE 8.01. CIVIL REMEDIES AND PROCEDURE* > *CHAPTER 4. LIMITATIONS OF ACTIONS* > *ARTICLE 1. IN GENERAL*

# § 8.01-229. Suspension or tolling of statute of limitations; effect of disabilities; effect of death; injunction; prevention of service by defendant; dismissal, nonsuit or abatement; devise for payment of debts; new promises; debts proved in creditors' suits

A. **Disabilities which toll the statute of limitations. --**Except as otherwise specifically provided in *§§ 8.01-237*, *8.01-241*, *8.01-242*, *8.01-243*, *8.01-243.1* and other provisions of this Code,

1. If a person entitled to bring any action is at the time the cause of action accrues an infant, except if such infant has been emancipated pursuant to Article 15 (*§ 16.1-331* et seq.) of Chapter 11 of Title 16.1, or incapacitated, such person may bring it within the prescribed limitation period after such disability is removed; or

2. After a cause of action accrues,

   a. If an infant becomes entitled to bring such action, the time during which he is within the age of minority shall not be counted as any part of the period within which the action must be brought except as to any such period during which the infant has been judicially declared emancipated; or

   b. If a person entitled to bring such action becomes incapacitated, the time during which he is incapacitated shall not be computed as any part of the period within which the action must be brought, except where a conservator, guardian or committee is appointed for such person in which case an action may be commenced by such conservator, committee or guardian before the expiration of the applicable period of limitation or within one year after his qualification as such, whichever occurs later.

   For the purposes of subdivisions 1 and 2, a person shall be deemed incapacitated if he is so adjudged by a court of competent jurisdiction, or if it shall otherwise appear to the court or jury determining the issue that such person is or was incapacitated within the prescribed limitation period.

3. If a convict is or becomes entitled to bring an action against his committee, the time during which he is incarcerated shall not be counted as any part of the period within which the action must be brought.

B. **Effect of death of a party. --**The death of a person entitled to bring an action or of a person against whom an action may be brought shall toll the statute of limitations as follows:

1. **Death of person entitled to bring a personal action. --**If a person entitled to bring a personal action dies with no such action pending before the expiration of the limitation period for commencement thereof, then an action may be commenced by the decedent's personal representative before the expiration of the limitation period including the limitation period as provided by subdivision E 3 or within one year after his qualification as personal representative, whichever occurs later.

2. **Death of person against whom personal action may be brought. --**a. If a person against whom a personal action may be brought dies before the commencement of such action and before the expiration of the limitation period for commencement thereof then a claim may be filed against the decedent's estate or an action may be commenced against the decedent's personal representative before the expiration of the applicable limitation period or within one year after the qualification of such personal representative, whichever occurs later.

   b. If a person against whom a personal action may be brought dies before suit papers naming such person as defendant have been filed with the court, then such suit papers may be amended to substitute the decedent's personal representative as party defendant before the expiration of the applicable limitation period or within

**AD 1**

Va. Code Ann. § 8.01-229

two years after the date such suit papers were filed with the court, whichever occurs later, and such suit papers shall be taken as properly filed.

**3. Effect of death on actions for recovery of realty, or a proceeding for enforcement of certain liens relating to realty. --**Upon the death of any person in whose favor or against whom an action for recovery of realty, or a proceeding for enforcement of certain liens relating to realty, may be brought, such right of action shall accrue to or against his successors in interest as provided in Article 2 (*§ 8.01-236* et seq.).

**4. Accrual of a personal cause of action against the estate of any person subsequent to such person's death. --**If a personal cause of action against a decedent accrues subsequent to his death, an action may be brought against the decedent's personal representative or a claim thereon may be filed against the estate of such decedent before the expiration of the applicable limitation period or within two years after the qualification of the decedent's personal representative, whichever occurs later.

**5. Accrual of a personal cause of action in favor of decedent. --**If a person dies before a personal cause of action which survives would have accrued to him, if he had continued to live, then an action may be commenced by such decedent's personal representative before the expiration of the applicable limitation period or within one year after the qualification of such personal representative, whichever occurs later.

**6. Delayed qualification of personal representative. --**If there is an interval of more than two years between the death of any person in whose favor or against whom a cause of action has accrued or shall subsequently accrue and the qualification of such person's personal representative, such personal representative shall, for the purposes of this chapter, be deemed to have qualified on the last day of such two-year period.

**C. Suspension during injunctions. --**When the commencement of any action is stayed by injunction, the time of the continuance of the injunction shall not be computed as any part of the period within which the action must be brought.

**D. Obstruction of filing by defendant. --**When the filing of an action is obstructed by a defendant's (i) filing a petition in bankruptcy or filing a petition for an extension or arrangement under the United States Bankruptcy Act or (ii) using any other direct or indirect means to obstruct the filing of an action, then the time that such obstruction has continued shall not be counted as any part of the period within which the action must be brought.

**E.** Dismissal, abatement, or nonsuit.

**1.** Except as provided in subdivision 3, if any action is commenced within the prescribed limitation period and for any cause abates or is dismissed without determining the merits, the time such action is pending shall not be computed as part of the period within which such action may be brought, and another action may be brought within the remaining period.

**2.** If a judgment or decree is rendered for the plaintiff in any action commenced within the prescribed limitation period and such judgment or decree is arrested or reversed upon a ground which does not preclude a new action for the same cause, or if there is occasion to bring a new action by reason of the loss or destruction of any of the papers or records in a former action which was commenced within the prescribed limitation period, then a new action may be brought within one year after such arrest or reversal or such loss or destruction, but not after.

**3.** If a plaintiff suffers a voluntary nonsuit as prescribed in *§ 8.01-380*, the statute of limitations with respect to such action shall be tolled by the commencement of the nonsuited action, regardless of whether the statute of limitations is statutory or contractual, and the plaintiff may recommence his action within six months from the date of the order entered by the court, or within the original period of limitation, or within the limitation period as provided by subdivision B 1, whichever period is longer. This tolling provision shall apply irrespective of whether the action is originally filed in a federal or a state court and recommenced in any other court, and shall apply to all actions irrespective of whether they arise under common law or statute.

**F. Effect of devise for payment of debts. --**No provision in the will of any testator devising his real estate, or any part thereof, subject to the payment of his debts or charging the same therewith, or containing any other provision for the payment of debts, shall prevent this chapter from operating against such debts, unless it plainly appears to be the testator's intent that it shall not so operate.

**G.** Effect of new promise in writing.

**AD 2**

Va. Code Ann. § 8.01-229

1. If any person against whom a right of action has accrued on any contract, other than a judgment or recognizance, promises, by writing signed by him or his agent, payment of money on such contract, the person to whom the right has accrued may maintain an action for the money so promised, within such number of years after such promise as it might be maintained if such promise were the original cause of action. An acknowledgment in writing, from which a promise of payment may be implied, shall be deemed to be such promise within the meaning of this subsection.

2. The plaintiff may sue on the new promise described in subdivision 1 or on the original cause of action, except that when the new promise is of such a nature as to merge the original cause of action then the action shall be only on the new promise.

**H. Suspension of limitations in creditors' suits. --**When an action is commenced as a general creditors' action, or as a general lien creditors' action, or as an action to enforce a mechanics' lien, the running of the statute of limitations shall be suspended as to debts provable in such action from the commencement of the action, provided they are brought in before the commissioner in chancery under the first reference for an account of debts; but as to claims not so brought in the statute shall continue to run, without interruption by reason either of the commencement of the action or of the order for an account, until a later order for an account, under which they do come in, or they are asserted by petition or independent action.

In actions not instituted originally either as general creditors' actions, or as general lien creditors' actions, but which become such by subsequent proceedings, the statute of limitations shall be suspended by an order of reference for an account of debts or of liens only as to those creditors who come in and prove their claims under the order. As to creditors who come in afterwards by petition or under an order of recommittal, or a later order of reference for an account, the statute shall continue to run without interruption by reason of previous orders until filing of the petition, or until the date of the reference under which they prove their claims, as the case may be.

**I.** When an action is commenced within a period of 30 days prior to the expiration of the limitation period for commencement thereof and the defending party or parties desire to institute an action as third-party plaintiff against one or more persons not party to the original action, the running of the period of limitation against such action shall be suspended as to such new party for a period of 60 days from the expiration of the applicable limitation period.

**J.** If any award of compensation by the Workers' Compensation Commission pursuant to Chapter 5 (*§ 65.2-500* et seq.) of Title 65.2 is subsequently found void ab initio, other than an award voided for fraudulent procurement of the award by the claimant, the statute of limitations applicable to any civil action upon the same claim or cause of action in a court of this Commonwealth shall be tolled for that period of time during which compensation payments were made.

**K. Suspension of limitations during criminal proceedings. --**In any personal action for damages, if a criminal prosecution arising out of the same facts is commenced, the time such prosecution is pending shall not be computed as part of the period within which such a civil action may be brought. For purposes of this subsection, the time during which a prosecution is pending shall be calculated from the date of the issuance of a warrant, summons or capias, the return or filing of an indictment or information, or the defendant's first appearance in any court as an accused in such a prosecution, whichever date occurs first, until the date of the final judgment or order in the trial court, the date of the final disposition of any direct appeal in state court, or the date on which the time for noting an appeal has expired, whichever date occurs last. Thereafter, the civil action may be brought within the remaining period of the statute or within one year, whichever is longer.

If a criminal prosecution is commenced and a grand jury indictment is returned or a grand jury indictment is waived after the period within which a civil action arising out of the same set of facts may be brought, a civil action may be brought within one year of the date of the final judgment or order in the trial court, the date of the final disposition of any direct appeal in state court, or the date on which the time for noting an appeal has expired, whichever date occurs last, but no more than 10 years after the date of the crime or two years after the cause of action shall have accrued under *§ 8.01-249*, whichever date occurs last.

# History

Va. Code Ann. § 8.01-229

Code 1950, §§ 8-8, 8-13, 8-15, 8-20, 8-21, 8-25, 8-26, 8-29 through 8-34; 1964, c. 219; 1966, c. 118; 1972, c. 825; 1977, c. 617; 1978, cc. 65, 767; 1983, cc. 404, 437; 1986, c. 506; 1987, cc. 294, 645; 1988, c. 711; *1989, c. 588*; *1990, c. 280*; *1991, cc. 693*, *722*; *1993, c. 844*; *1997, c. 801*; *2000, c. 531*; *2001, cc. 773*, *781*; *2016, cc. 189*, *268*.

CODE OF VIRGINIA

Copyright © 2016 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved

---

**End of Document**

**AD 4**

## *Va. Code Ann. § 8.01-230*

Includes all acts adopted at the 2016 Regular Session of the General Assembly.

*Code of Virginia* > *TITLE 8.01. CIVIL REMEDIES AND PROCEDURE* > *CHAPTER 4. LIMITATIONS OF ACTIONS* > *ARTICLE 1. IN GENERAL*

## § 8.01-230. Accrual of right of action

In every action for which a limitation period is prescribed, the right of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person or damage to property, when the breach of contract occurs in actions ex contractu and not when the resulting damage is discovered, except where the relief sought is solely equitable or where otherwise provided under *§ 8.01-233*, subsection C of *§ 8.01-245*, *§§ 8.01-249*, *8.01-250* or other statute.

## History

1977, c. 617; *1996, c. 328*.

CODE OF VIRGINIA

Copyright © 2016 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved

**AD 5**

## *Va. Code Ann. § 8.01-246*

Includes all acts adopted at the 2016 Regular Session of the General Assembly.

*Code of Virginia* > *TITLE 8.01. CIVIL REMEDIES AND PROCEDURE* > *CHAPTER 4. LIMITATIONS OF ACTIONS* > *ARTICLE 3. PERSONAL ACTIONS GENERALLY*

## § 8.01-246. Personal actions based on contracts

Subject to the provisions of *§ 8.01-243* regarding injuries to person and property and of *§ 8.01-245* regarding the application of limitations to fiduciaries, and their bonds, actions founded upon a contract, other than actions on a judgment or decree, shall be brought within the following number of years next after the cause of action shall have accrued:

1. In actions or upon a recognizance, except recognizance of bail in a civil suit, within ten years; and in actions or motions upon a recognizance of bail in a civil suit, within three years, omitting from the computation of such three years such time as the right to sue out such execution shall have been suspended by injunction, supersedeas or other process;

2. In actions on any contract which is not otherwise specified and which is in writing and signed by the party to be charged thereby, or by his agent, within five years whether such writing be under seal or not;

3. In actions by a partner against another for settlement of the partnership account or in actions upon accounts concerning the trade of merchandise between merchant and merchant, their factors, or servants, within five years from the cessation of the dealings in which they are interested together;

4. In actions upon any unwritten contract, express or implied, within three years.

Provided that as to any action to which *§ 8.2-725* of the Uniform Commercial Code is applicable, that section shall be controlling except that in products liability actions for injury to person and for injury to property, other than the property subject to contract, the limitation prescribed in *§ 8.01-243* shall apply.

## History

Code 1950, §§ 8-13, 8-17, 8-23; 1964, c. 219; 1966, c. 118; 1977, c. 617.

CODE OF VIRGINIA

Copyright © 2016 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved

**AD 6**

## *Va. Code Ann. § 59.1-487*

Current through Chapter 1-4, 19, 55, and 71 of the 2016 Regular Session of the General Assembly.

*Code of Virginia* > *TITLE 59.1. TRADE AND COMMERCE* > *CHAPTER 42.1. UNIFORM ELECTRONIC TRANSACTIONS ACT*

# § 59.1-487. Attribution and effect of electronic record and electronic signature

**(a)** An electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable.

**(b)** The effect of an electronic record or electronic signature attributed to a person under subsection (a) is determined from the context and surrounding circumstances at the time of its creation, execution, or adoption, including the parties' agreement, if any, and otherwise as provided by law.

## History

*2000, c. 995*.

**Annotations**

## Commentary

**OFFICIAL COMMENT**

1. Under subsection (a), so long as the electronic record or electronic signature resulted from a person's action it will be attributed to that person -- the legal effect of that attribution is addressed in subsection (b). This section does not alter existing rules of law regarding attribution. The section assures that such rules will be applied in the electronic environment. A person's actions include actions taken by human agents of the person, as well as actions taken by an electronic agent, i.e., the tool, of the person. Although the rule may appear to state the obvious, it assures that the record or signature is not ascribed to a machine, as opposed to the person operating or programing the machine.

In each of the following cases, both the electronic record and electronic signature would be attributable to a person under subsection (a):

A. The person types his/her name as part of an e-mail purchase order;

B. The person's employee, pursuant to authority, types the person's name as part of an e-mail purchase order;

C. The person's computer, programmed to order goods upon receipt of inventory information within particular parameters, issues a purchase order which includes the person's name, or other identifying information, as part of the order.

In each of the above cases, law other than this Act would ascribe both the signature and the action to the person if done in a paper medium. Subsection (a) expressly provides that the same result will occur when an electronic medium is used.

2. Nothing in this section affects the use of a signature as a device for attributing a record to a person. Indeed, a signature is often the primary method for attributing a record to a person. In the foregoing examples, once the electronic signature is attributed to the person, the electronic record would also be attributed to the person, unless the person established fraud, forgery, or other invalidating cause. However, a signature is not the only method for attribution.

3. The use of facsimile transmissions provides a number of examples of attribution using information other than a signature. A facsimile may be attributed to a person because of the information printed across the top of the page that

**AD 7**

Va. Code Ann. § 59.1-487

indicates the machine from which it was sent. Similarly, the transmission may contain a letterhead which identifies the sender. Some cases have held that the letterhead actually constituted a signature because it was a symbol adopted by the sender with intent to authenticate the facsimile. However, the signature determination resulted from the necessary finding of intention in that case. Other cases have found facsimile letterheads NOT to be signatures because the requisite intention was not present. The critical point is that with or without a signature, information within the electronic record may well suffice to provide the facts resulting in attribution of an electronic record to a particular party.

In the context of attribution of records, normally the content of the record will provide the necessary information for a finding of attribution. It is also possible that an established course of dealing between parties may result in a finding of attribution. Just as with a paper record, evidence of forgery or counterfeiting may be introduced to rebut the evidence of attribution.

4. Certain information may be present in an electronic environment that does not appear to attribute but which clearly links a person to a particular record. Numerical codes, personal identification numbers, public and private key combinations all serve to establish the party to whom an electronic record should be attributed. Of course, security procedures will be another piece of evidence available to establish attribution.

The inclusion of a specific reference to security procedures as a means of proving attribution is salutary because of the unique importance of security procedures in the electronic environment. In certain processes, a technical and technological security procedure may be the best way to convince a trier of fact that a particular electronic record or signature was that of a particular person. In certain circumstances, the use of a security procedure to establish that the record and related signature came from the person's business might be necessary to overcome a claim that a hacker intervened. The reference to security procedures is not intended to suggest that other forms of proof of attribution should be accorded less persuasive effect. It is also important to recall that the particular strength of a given procedure does not affect the procedure's status as a security procedure, but only affects the weight to be accorded the evidence of the security procedure as tending to establish attribution.

5. This section does apply in determining the effect of a "click-through" transaction. A "click-through" transaction involves a process which, if executed with an intent to "sign," will be an electronic signature. See definition of Electronic Signature. In the context of an anonymous "click-through," issues of proof will be paramount. This section will be relevant to establish that the resulting electronic record is attributable to a particular person upon the requisite proof, including security procedures which may track the source of the click-through.

6. Once it is established that a record or signature is attributable to a particular party, the effect of a record or signature must be determined in light of the context and surrounding circumstances, including the parties' agreement, if any. Also informing the effect of any attribution will be other legal requirements considered in light of the context. Subsection (b) addresses the effect of the record or signature once attributed to a person.

CODE OF VIRGINIA

Copyright © 2016 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved

**AD 8**

## *Va. Code Ann. § 59.1-490*

Current through Chapter 1-4, 19, 55, and 71 of the 2016 Regular Session of the General Assembly.

*Code of Virginia* > *TITLE 59.1. TRADE AND COMMERCE* > *CHAPTER 42.1. UNIFORM ELECTRONIC TRANSACTIONS ACT*

# § 59.1-490. Retention of electronic record

**(a)** If a law requires that a record be retained, the requirement is satisfied by retaining an electronic record of the information in the record which:

**(1)** Accurately reflects the information set forth in the record at the time and after it was first generated in its final form as an electronic record or otherwise; and

**(2)** Remains accessible for later reference.

**(b)** A requirement to retain a record in accordance with subsection (a) does not apply to any information the sole purpose of which is to enable the record to be sent, communicated, or received.

**(c)** A person may satisfy subsection (a) by using the services of another person if the requirements of that subsection are satisfied.

**(d)** If a law requires a record to be presented or retained in its original form, or provides consequences if the record is not presented or retained in its original form, that law is satisfied by an electronic record retained in accordance with subsection (a).

**(e)** If a law requires retention of a check, that requirement is satisfied by retention of an electronic record of the information on the front and back of the check in accordance with subsection (a).

**(f)** A record retained as an electronic record in accordance with subsection A satisfies a law requiring a person to retain a record for evidentiary, audit, or like purposes, unless a law enacted after the effective date of this chapter specifically prohibits the use of an electronic record for the specified purpose.

**(g)** This section does not preclude a public body of the Commonwealth from specifying additional requirements for the retention of a record subject to such public body's jurisdiction.

## History

*2000, c. 995.*

**Annotations**

## Commentary

**OFFICIAL COMMENT**

1. This section deals with the serviceability of electronic records as retained records and originals. So long as there exists reliable assurance that the electronic record accurately reproduces the information, this section continues the theme of establishing the functional equivalence of electronic and paper-based records. This is consistent with *Fed.R.Evid. 1001(3)* and Unif.R.Evid. 1001(3) (1974). This section assures that information stored electronically will remain effective for all audit, evidentiary, archival and similar purposes.

2. In an electronic medium, the concept of an original document is problematic. For example, as one drafts a document on a computer the "original" is either on a disc or the hard drive to which the document has been initially saved. If one periodically saves the draft, the fact is that at times a document may be first saved to disc then to hard drive, and at others

Va. Code Ann. § 59.1-490

vice versa. In such a case the ″original″ may change from the information on the disc to the information on the hard drive. Indeed, it may be argued that the ″original″ exists solely in RAM and, in a sense, the original is destroyed when a ″copy″ is saved to a disc or to the hard drive. In any event, in the context of record retention, the concern focuses on the integrity of the information, and not with its ″originality.″

3. Subsection (a) requires accuracy and the ability to access at a later time. The requirement of accuracy is derived from the Uniform and Federal Rules of Evidence. The requirement of continuing accessibility addresses the issue of technology obsolescence and the need to update and migrate information to developing systems. It is not unlikely that within the span of 5-10 years (a period during which retention of much information is required) a corporation may evolve through one or more generations of technology. More to the point, these technologies may be incompatible with each other necessitating the reconversion of information from one system to the other.

For example, certain operating systems from the early 1980's, e.g., memory typewriters, became obsolete with the development of personal computers. The information originally stored on the memory typewriter would need to be converted to the personal computer system in a way meeting the standards for accuracy contemplated by this section. It is also possible that the medium on which the information is stored is less stable. For example, information stored on floppy discs is generally less stable, and subject to a greater threat of disintegration, than information stored on a computer hard drive. In either case, the continuing accessibility issue must be satisfied to validate information stored by electronic means under this section.

This section permits parties to convert original written records to electronic records for retention so long as the requirements of subsection (a) are satisfied. Accordingly, in the absence of specific requirements to retain written records, written records may be destroyed once saved as electronic records, satisfying the requirements of this section.

The subsection refers to the information contained in an electronic record, rather than relying on the term electronic record, as a matter of clarity that the critical aspect in retention is the information itself. What information must be retained is determined by the purpose for which the information is needed. If the addressing and pathway information regarding an e-mail is relevant, then that information should also be retained. However if it is the substance of the e-mail that is relevant, only that information need be retained. Of course, wise record retention would include all such information since what information will be relevant at a later time will not be known.

4. Subsections (b) and (c) simply make clear that certain ancillary information or the use of third parties, does not affect the serviceability of records and information retained electronically. Again, the relevance of particular information will not be known until that information is required at a subsequent time.

5. Subsection (d) continues the theme of the Act as validating electronic records as originals where the law requires retention of an original. The validation of electronic records and electronic information as originals is consistent with the Uniform Rules of Evidence. See Uniform Rules of Evidence 1001(3), 1002, 1003 and 1004.

6. Subsection (e) specifically addresses particular concerns regarding check retention statutes in many jurisdictions. A Report compiled by the Federal Reserve Bank of Boston identifies hundreds of state laws which require the retention or production of original canceled checks. Such requirements preclude banks and their customers from realizing the benefits and efficiencies related to truncation processes otherwise validated under current law. The benefits to banks and their customers from electronic check retention are effectuated by this provision.

7. Subsections (f) and (g) generally address other record retention statutes. As with check retention, all businesses and individuals may realize significant savings from electronic record retention. So long as the standards in Section 12 [*§ 59.1-490*] are satisfied, this section permits all parties to obtain those benefits. As always the government may require records in any medium, however, these subsections require a governmental agency to specifically identify the types of records and requirements that will be imposed.

CODE OF VIRGINIA

**AD 10**

Va. Code Ann. § 59.1-490

Copyright © 2016 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved

## *Va. Code Ann. § 59.1-491*

Current through Chapter 1-4, 19, 55, and 71 of the 2016 Regular Session of the General Assembly.

*Code of Virginia* > *TITLE 59.1. TRADE AND COMMERCE* > *CHAPTER 42.1. UNIFORM ELECTRONIC TRANSACTIONS ACT*

# § 59.1-491. Admissibility of evidence

**(a)** In any proceeding, evidence of a record or signature may not be excluded solely because it is in electronic form.

**(b)** In determining the evidentiary weight to be given a particular electronic signature, the trier of fact shall consider whether the electronic signature is: (i) unique to the signer, (ii) capable of verification, (iii) under the signer's sole control, (iv) linked to the record in such a manner that it can be determined if any data contained in the record was changed subsequent to the electronic signature being affixed to the record, and (v) created by a method appropriately reliable for the purpose for which the electronic signature was used. The trier of fact may consider any other relevant and probative evidence affecting the authenticity and/or validity of the electronic signature.

## History

*2000, c. 995*.

**Annotations**

## Commentary

**OFFICIAL COMMENT**

Like Section 7 [*§ 59.1-485*], this section prevents the nonrecognition of electronic records and signatures solely on the ground of the media in which information is presented.

Nothing in this section relieves a party from establishing the necessary foundation for the admission of an electronic record. See Uniform Rules of Evidence 1001(3), 1002, 1003 and 1004.

CODE OF VIRGINIA

Copyright © 2016 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved

**AD 12**